DAVID A. STEINBERG (SBN 130593)
MARC E. MAYER (SBN 190969)
EMILY F. EVITT (SBN 261491)
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Defendants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAN DIEGO DIVISION

| | |
|---|---|
| JANE DOE NOS. 1 through 50, inclusive, individuals,<br><br>Plaintiffs,<br><br>v.<br><br>MG FREESITES, LTD., dba "PORNHUB," a foreign entity; MINDGEEK S.A.R.L. a foreign entity; MINDGEEK USA INCORPORATED, a Delaware corporation; 9219-1568 QUEBEC, INC., dba "MindGeek," a foreign entity; and MG BILLING US CORP., dba "Probiller.com," a Delaware corporation,<br><br>Defendants. | CASE NO. 3:20-CV-02440-WQH-KSC<br><br>Judicial Officer: William Q. Hayes<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE PURSUANT TO FRCP 12(f)**<br><br>Hearing Date: June 7, 2021<br><br><u>NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT</u> |

Mitchell Silberberg & Knupp LLP

CASE NO. 3:20-CV-02440
**MEMORANDUM IN SUPPORT OF MOTION TO STRIKE**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................... 1

II.   BACKGROUND ............................................................................................. 3

III.  SECTION J OF THE FAC SHOULD BE STRIKEN BECAUSE IT IS IMMATERIAL, IRRELEVANT, SCANDALOUS, AND PREJUDICIAL .. 9

IV.  CONCLUSION ............................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Beasley v. Lucky Stores, Inc.*,
  400 F. Supp. 3d 942 (N.D. Cal. 2019) .................................................................. 10, 13, 15

*Bureerong v. Uvawas*,
  922 F. Supp. 1450 (C.D. Cal. 1996) ..................................................................... 14

*Cairns v. Franklin Mint Co.*,
  24 F. Supp. 2d 1013 (C.D. Cal. 1998) .................................................................. 14

*Doe 1 v. Red Roof Inns, Inc.*,
  2020 WL 1872335 (N.D. Ga. Apr. 13, 2020) ................................................. 11, 13

*Doe 2 v. Red Roof Inns, Inc.*,
  2020 WL 1872337 (N.D. Ga. Apr. 13, 2020) ....................................................... 11

*Doe 3 v. Red Roof Inns, Inc.*,
  2020 WL 1872333 (N.D. Ga. Apr. 13, 2020) ....................................................... 11

*Doe 4 v. Red Roof Inns, Inc.*,
  2020 WL 1872336 (N.D. Ga. Apr. 13, 2020) ....................................................... 11

*Doe v. Bates*,
  2006 WL 3813758 (E.D. Tex. Dec. 27, 2006) ............................................... 12, 13

*Doe v. Franco Prods.*,
  2000 WL 816779 (N.D. Ill. June 22, 2000) ......................................................... 12

*Fantasy, Inc. v. Fogerty*,
  984 F.2d 1524 (9th Cir. 1993) .............................................................. 3, 9, 10, 15

*Ghahremani v. Borders Group, Inc.*,
  2010 WL 4008506 (S.D. Cal. Oct. 6, 2010) ............................... 9, 10, 11, 13, 16

*Gonzalez v. Google, Inc.*,
  282 F. Supp. 3d 1150 (N.D. Cal. 2017) ............................................................... 12

*Lyons v. Bank of America, NA*,
  2011 WL 6303390 (N.D. Cal. Dec. 16, 2011) ..................................................... 14

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*O'Connor v. Roman Catholic Church of Diocese of Phoenix*,
 2005 WL 8160695 (D. Ariz. July 8, 2005) .......................................................... 14

*Survivor Prods. LLC v. Fox Broad. Co.*,
 2001 WL 35829267 (C.D. Cal. June 12, 2001) ........................................... 9, 11, 13

*Vess v. Bank of Am., N.A.*,
 2012 WL 113748 (S.D. Cal. Jan. 13, 2012) ......................................................... 9

**STATUTES**

18 U.S.C.
 § 1591 ................................................................................................................. 12
 § 1595 ........................................................................................................*passim*
 § 2257 ................................................................................................................... 3

47 U.S.C. § 230 ............................................................................................... 12, 15

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(f) ......................................................... 3, 9, 10, 11

## I. INTRODUCTION

This Motion to Strike is necessitated by Plaintiffs' filing of an Amended Complaint that includes dozens of incendiary allegations that bear no relationship to Plaintiffs' claims in this lawsuit, but instead were included to amplify false, unsupportable, and sensational accusations made by media pundits or by anti-pornography organizations such as "Exodus Cry."[1] These accusations have no purpose other than to disparage and harm Defendants, and they have no place in this case.

This lawsuit is not, and should not be, a referendum on the overall business practices of adult-oriented websites and social media platforms such as those operated by Defendant MG Freesites Ltd and its affiliates (collectively, "MindGeek").[2] Nor should it be used as a platform for anti-pornography crusaders and "abolitionists." Instead, what this lawsuit is actually about is the alleged criminal conduct of a discrete group of individuals and companies that produced and distributed sexually explicit content under the moniker "GirlsDoPorn" (collectively "GDP"). Specifically, Plaintiffs are a group of women who knowingly appeared in explicit videos produced by GDP (the "GDP Videos") but allege that their agreement to be filmed and their participation in the GDP Videos was procured by fraudulent and/or coercive tactics by GDP's principals and agents. Some of the Plaintiffs already have obtained a large monetary judgment against GDP, but now seek to separately hold MindGeek liable for GDP's conduct.[3] MindGeek's websites

---

[1] "Exodus Cry" is a "faith-based anti-trafficking organization with ties to a homophobic megachurch that wants to end the porn industry." https://www.vice.com/en/article/n7bj9w/anti-porn-extremism-pornhub-traffickinghub-exodus-cry-ncose.

[2] Defendants also include MindGeek S.à.r.l., MindGeek USA Incorporated, 9219-1568 Quebec Inc., and MG Billing US Corp., though none of these entities was involved in any of the alleged conduct at issue.

[3] GDP's principals have also been charged with federal sex trafficking crimes.

were among many platforms used by GDP to post promotional excerpts or trailers of the GDP Videos. As a result, Plaintiffs allege that MindGeek "knowingly participated in" GDP's acts of sex trafficking and thus is liable under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595.

Plaintiffs' initial complaint properly limited its scope to GDP's conduct and MindGeek's purported knowledge of that conduct. However, on April 1, 2021, Plaintiffs filed an Amended Complaint ("FAC") against MindGeek. In addition to adding Plaintiffs, Defendants, and allegations throughout the body of the complaint, the FAC added an entirely new Section J titled, "MindGeek Facilitates and Encourages Non-Consensual Content on its Tubesites Because MindGeek Itself Benefits From Such Content." Section J, which consists of over 10 pages and over 30 paragraphs, has nothing to do with GDP or Plaintiffs, but instead is dedicated to unsupported and irrelevant claims made by anti-porn advocates about illegal videos (such as those depicting minors or recorded without the knowledge of the participant) that purportedly were uploaded to MindGeek's websites by unrelated third parties. None of these videos depicts Plaintiffs, and none of them was uploaded by GDP. To add to the FAC's shock value, Plaintiffs have loaded Section J with the titles of offensive videos that allegedly appeared on MindGeek's websites – *none* of which is a GDP Video.

MindGeek does not seek to strike any of Plaintiffs' allegations that pertain to their claims regarding MindGeek's alleged participation in GDP's unlawful conduct. But the immaterial, impertinent, and scandalous allegations of Section J should not be made a part of this lawsuit.[4] The Court has broad discretion to strike such

---

[4] On April 27, 2021, counsel for MindGeek advised Plaintiffs' counsel that MindGeek planned to file a Motion to Strike the allegations of Section J, on the grounds that they had no place in the FAC and stoked hatred. MindGeek's counsel asked Plaintiffs to voluntarily withdraw the allegations of Section J. Plaintiffs' counsel apparently recognized that Paragraphs 230, 231, and 239 were

allegations where, as here, they "create[] serious risks of prejudice…, delay, and confusion of the issues." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) (internal citations omitted). MindGeek therefore moves to strike Section J pursuant to Federal Rule of Civil Procedure 12(f).[5]

## II. BACKGROUND

**MindGeek, its Websites, and GDP.** MindGeek is a group of companies whose business includes, in part, the maintenance and operation of websites (the "Websites") that enable third parties (including, at one time, members of the public) to post and distribute digital media content, primarily adult-oriented content. One of MindGeek's Websites is Pornhub.com. (FAC ¶¶ 90, 93.)

Among the content available on the Websites is promotional trailers or teaser videos for subscription-based websites that offer professionally produced content and comply with federal record-keeping laws such as 18 U.S.C. § 2257.[6] For example, MindGeek's "Content Partner Program" allows adult entertainment studios to create and populate dedicated "channels" to showcase their content to members of the public. (*Id.* ¶ 98.) MindGeek's "Viewshare Program" allows adult entertainment studios to license content to MindGeek for viewing by members who pay to join MindGeek's "premium" program. (*Id.* ¶¶ 105-06.) At one time, GDP

---

inflammatory, and offered to withdraw them, but refused to remove the remaining paragraphs of Section J.

[5] On April 23, 2021, MindGeek filed a Motion for a Stay of Proceedings Pursuant to 18 U.S.C. § 1595(b), on the grounds that there are criminal proceedings pending against GDP's principals that arise from the same wrongdoing and involve the same victims. (Docket No. 28.) If the Court grants MindGeek's Motion to Stay, it need not decide this Motion to Strike until after the stay is lifted.

[6] 18 U.S.C. § 2257 requires that producers of sexually explicit materials maintain and make available for inspection records documenting the names and ages of the persons portrayed.

was a MindGeek "content partner" and provided content to the Viewshare Program. (*Id*. ¶ 145.) GDP thus maintained dedicated video channels and uploaded samples of its content to those channels. (*Id*. ¶ 146.) Neither GDP nor MindGeek ever marketed or advertised GDP Videos as having been created without the consent of the persons depicted. To the contrary, GDP purported to have obtained releases from the participants in its videos (*id*. ¶ 130) – consistent with MindGeek's record-keeping obligations for its content partners.

**Plaintiffs and Their Claims Against MindGeek.** Plaintiffs are 50 women who claim to have appeared in one or more GDP Videos between 2009 and 2019. (*Id*. ¶¶ 1-50, 141.) Plaintiffs admit that they agreed to appear in the videos. (*Id*. ¶¶ 127, 130.) But they allege that their agreement to participate in the GDP Videos was the result of deception, fraud, and/or coercion by GDP and its principals, namely that they believed the videos would be privately distributed and not uploaded to any website. (*Id*. ¶¶ 123-26.) Paragraphs 114 through 141 of the FAC, which MindGeek does *not* seek to strike, detail a myriad of ways that GDP allegedly carried out its deception, fraud, and coercion.[7] The U.S. Attorney for the Southern District of California has brought criminal indictments against at least three individuals associated with GDP. (*Id*. ¶ 71.) None of these individuals is alleged to be an agent or employee of MindGeek.

Plaintiffs do not allege that they were unaware that they were being filmed (*e.g.*, by a hidden camera), that they were minors at the time the filming took place,

---

[7] GDP's scheme allegedly included: posting deceptive advertisements and sending deceptive emails (FAC ¶¶ 118, 121); lying to the victims over the phone (*id*. ¶ 123); coaching and paying fake "references" to create a false sense of security for the victims (*id*. ¶ 124); falsely representing the amount of compensation to be paid to the victims (*id*. ¶ 127); providing them with drugs and alcohol (*id*. ¶ 129); coercing them into signing formal model release agreements (*id*. ¶ 130); setting up "shell" entities to disguise the nature of the GDP venture (*id*. ¶ 131); forcing the victims to pretend on camera that they were acting voluntarily (*id*. ¶ 132); and encouraging others to "dox" the victims (*i.e.,* publicize the victims' names and other personal information) (*id*. ¶¶ 134-40).

or that they understood that the GDP Videos would not be shared beyond their participants. Plaintiffs likewise do not allege that MindGeek directly participated in any of the deception, fraud, or coercion that led Plaintiffs to participate in the GDP Videos. Instead, Plaintiffs allege that GDP is a sex trafficking venture and MindGeek is liable as a "participant" in that venture under 18 U.S.C. § 1595 because it had knowledge of GDP's conduct and profited from the distribution of the GDP Videos. (FAC ¶¶ 266-67.) Thus, the central dispute in this case is whether MindGeek can be liable as a result of its relationship with **GDP**. Whether ***other*** anonymous persons or entities posted videos without the consent of their participants, or whether MindGeek generally failed to adequately police the Websites is irrelevant to this case.

**Plaintiffs' Irrelevant and Inflammatory Allegations About Third-Party Content.** In the FAC, Plaintiffs not only included dozens of paragraphs about GDP, but also added 31 paragraphs (¶¶ 218-49; Section "J") containing far-reaching, general accusations about anonymous illegal third-party content that was uploaded to the Websites by members of the public (such as underage videos, "revenge porn," and "hidden camera" videos), and allegations about the efficacy of MindGeek's content moderation and screening processes.

These third-party content allegations are glaringly out of place, since they have nothing to do with GDP or any other professional content producer. The allegations concern amateur, user-generated content ("UGC") uploaded to MindGeek's Websites. None of these allegations involves GDP Videos, nor any videos that purportedly depict Plaintiffs. (*Id.* ¶¶ 218-49.) They do not involve the programs that GDP participated in as a professional content producer (*i.e.*, the Content Partner and Viewshare Programs), and make only one passing reference to content partners. In fact, these allegations concern the exact ***opposite*** situation: whereas GDP purported to have obtained consent from the participants for its professional videos, the allegations in Section J concern amateur videos that purport

to have been created *without* consent. (*Id.*) Furthermore, the Section J allegations are not based on any knowledge or investigation conducted by Plaintiffs, but instead are "substantiated" through citations to newspaper articles and unsupported, provocative statements made by Exodus Cry spokesperson and anti-pornography advocate Laila Mickelwait and her surrogate Michael Bowe. (*See, e.g., id*. ¶¶ 230-233, 235-36, 238-39, 241 nn.26-31, 33-39.)

Some of the allegations in Section J are sweeping accusations about MindGeek, such as:

- "MindGeek has a long, well-documented history of content depicting nonconsensual sexual acts being posted, viewed, shared, and monetized on its [Websites], including, *inter alia*, videos of children engaged in sexual acts, women being raped, sex acts filmed using 'spy-cams' without gaining one or more participant's consent, sex acts performed while one party was clearly unconscious or severely impaired." (*Id.* ¶ 219.)
- "non-consensual videos are popular, drive traffic to affiliates, and increase revenue for MindGeek." (*Id.* ¶ 223.)
- "MindGeek knows exactly what is on its [Websites] and knows which types of content are the most popular and drive the most revenue. MindGeek's business practice is to permit content to remain on its [Websites] as long as that content is popular and drives revenue—regardless of whether that content is legal or not. (*Id.* ¶ 227.)
- "MindGeek's officers, directors and managing agents made a deliberate decision to institute policies and procedures within MindGeek's reporting system that would prevent content moderators who learn of this illegal material from alerting any officer, director or managing agent of the presence of the illegal video on Mindgeek's websites." (*Id.* ¶ 234.)

- "MindGeek encouraged content moderators to find a way *not* to remove content if at all possible…. MindGeek has *never* acted swiftly to remove videos after receiving complaints." (*Id.* ¶ 240 emphasis in original.)

- "when public scrutiny has been drawn to non-consensual content based on comments and tags, … MindGeek has left the video on its site but manipulated the content by removing the comments and tags for the videos. Such actions by MindGeek conceal unlawful content and interfere with law enforcement's ability to find unlawful material and pursue the perpetrators." (*Id.* ¶ 241, footnote omitted.)

- "throughout its initial 13 years of operation, MindGeek *chose* not to fingerprint content that it *knew* was illegal—thereby choosing to permit it to be uploaded again." (*Id.* ¶ 243.)

- While MindGeek claims that it does not want non-consensual content on its [Websites], in reality, MindGeek permits, facilitates, and even encourages this type of illegal content *because it is popular, increases traffic, and drives revenue*. (*Id.* ¶ 245, emphasis original.)

Other allegations in Section J are incendiary lists of titles of videos that supposedly appeared on MindGeek's Websites – **none of which is a GDP Video**, and none of which has ever actually been proven to be illegal or nonconsensual – including alleged videos with titles such as "Innocent Teenage Girls are Used and Exploited," "F[****]d Sister Hard in the Ass While She Was Drunk and Sleeping," and "Hidden Camera: Girls in the Toilet At Prom[.]" (*Id.* ¶ 230 & n.26, citing testimony of Laila Mickelwait). Plaintiffs list *31* of such purported titles – presumably for shock value. (*Id.*) Similarly, Plaintiffs cite alleged anonymous comments on videos – **none of which appears to have any relation to GDP**. (*Id.* ¶ 231 & n.27, citing testimony of Laila Mickelwait.) And Plaintiffs quote search terms – such as "abused teen" and "spycam shower" – that they claim "are clearly

intended to return non-consensual material." (*Id.* ¶ 247 & n.43, citing testimony of Laila Mickelwait.) These search terms not only have no apparent relationship to GDP, but also are not even alleged to have returned GDP Videos in response.

Finally, Section J recounts, third-hand, the stories of claimed anonymous victims whose videos were allegedly posted to MindGeek's Websites – ***none of whom is a Plaintiff in this action or a victim of GDP***, including:

- "A 14-year-old girl found a nude video of herself, which she had taken and sent privately to her boyfriend, posted on [MindGeek's website] Pornhub." (FAC ¶ 239(a).)
- "A video of a 15-year-old girl being raped was posted on [MindGeek's website] Pornhub." (*Id.* ¶ 239(b).)
- "A child younger than 10 was sold into trafficking and was the subject of child pornography for almost 10 years." (*Id.* ¶ 239(c).)
- "A 15-year-old was secretly filmed via computer hack and then extorted to do other videos." (*Id.* ¶ 239(d).)
- "[A] woman [who] found explicit videos of herself taken by an ex-boyfriend when she was severely intoxicated and posted on Pornhub without her knowledge or consent." (*Id.* ¶ 239(e).)
- "A woman found an explicit video of herself taken while she was underage posted on a MindGeek website." (*Id.* ¶ 239(f).)
- "A woman who was sex trafficked from ages 9 to 17 found videos of her being raped as a minor on [MindGeek's Websites] Pornhub and RedTube." (*Id.* ¶ 239(g).)
- "One woman found a video of herself being orally raped on [MindGeek's website] Pornhub in which she is crying, screaming, and had a bloody nose." (*Id.* ¶ 239(h).)
- "A 14-year-old girl was raped by a man while another filmed." (*Id.* ¶ 239(i).)

## III. SECTION J OF THE FAC SHOULD BE STRIKEN BECAUSE IT IS IMMATERIAL, IRRELEVANT, SCANDALOUS, AND PREJUDICIAL

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter." "'**Immaterial**' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc.*, 984 F.2d at 1527 (emphasis added, citation omitted). "'**Impertinent**' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* "'**Scandalous**' matter includes allegations that cast a cruelly derogatory light on a party or other person." *Survivor Prods. LLC v. Fox Broad. Co.*, 2001 WL 35829267, at *3 (C.D. Cal. June 12, 2001) (emphasis added, internal citation and quotations omitted).

"[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial...." *Fantasy, Inc.*, 984 F.2d at 1527, quoting *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Courts strike those allegations that are unrelated to the issues and cause prejudice. *Ghahremani v. Borders Group, Inc.*, 2010 WL 4008506, at *1 (S.D. Cal. Oct. 6, 2010). "The decision whether to grant a motion to strike is within the broad discretion of the district court." *Vess v. Bank of Am., N.A.*, 2012 WL 113748, at *12 (S.D. Cal. Jan. 13, 2012).

In *Fantasy, Inc.*, the Ninth Circuit affirmed the district court's order striking counterclaimant John Fogerty's allegations that predecessors-in-interest of Fantasy, Inc. had fraudulently induced him to enter into an unwise and illegal tax shelter scheme many years earlier. 984 F.2d 1524. Fogerty argued that these allegations "present[ed] 'relevant background and foundational facts' establishing a pattern of abuse…." *Id.* at 1528. The Court disagreed, holding that the district court had properly stricken these purported background allegations as not relevant to Fogerty's counterclaims. *Id.* The Ninth Circuit found that the allegations "created

serious risks of prejudice to Fantasy, delay, and confusion of the issues." *Id.* The Court reasoned that these allegations "would have been burdensome for Fantasy to answer …. would lead to unwarranted and prejudicial inferences against Fantasy … [and] would have unnecessarily complicated the trial…." *Id.*

Courts routinely strike allegations about a defendant's unrelated past practices. For example, in *Beasley v. Lucky Stores, Inc.* – an unfair competition action relating to Nestlé's Coffee-mate product – the court granted defendant Nestlé USA, Inc.'s motion to strike portions of plaintiff's amended complaint alleging that Nestlé had "a pattern and practice of oppressive and unlawful conduct toward consumers…." 400 F. Supp. 3d 942, 962 (N.D. Cal. 2019). Specifically, plaintiff claimed that Nestlé:

> (1) "promot[ed] ... the ringleaders in a criminal price fixing conspiracy" pertaining to the pricing of chocolate; (2) "lies to women in developing countries, using saleswomen dressed as nurses, telling them Nestle powder formula is superior to mother's breast milk"; (3) "does business with cocoa bean companies that use child slave labor"; (4) has been warned by the Food and Drug Administration ("FDA") that "its Gerber baby foods have 'unauthorized' and 'misleading' label claims and websites"; and (5) "targets parents of older children with false and misleading advertising on its diabetes-inducing junk foods" and has received "warning letter[s]" from the FDA in connection therewith.

*Id.* at 962-63 (internal citations omitted). None of these allegations related to **Coffee-mate**. *Id.* at 963. The court concluded, "given how far afield the challenged allegations range from the conduct and claims at issue in the instant case … their inclusion in the FAC serves solely to prejudice Nestlé by painting it as a bad actor[,]" and struck the allegations as "immaterial, impertinent [and] scandalous" under Rule 12(f). *Id.* at 963 (internal citation and quotations omitted).

This principle extends to accusations that defendants have committed similar wrongs against unrelated plaintiffs. In *Ghahremani*, for example, plaintiff sued defendants for copyright infringement, and alleged, "[a]t least two other independent artists claim to have been infringed in nearly the exact same way. Defendants'

1 scheme has been well publicized by The Guardian (see http://www
2 .guardian.co.uk/artanddesign/ 2010/feb/11/paperchase-design-hidden-e1oise) and
3 Etsy.com (see http://www.etsy.com/storque/ reviews/uk–edition–big–brand–
4 copycats–7283/).” 2010 WL 4008506 at *2.  The court rejected plaintiff's claim
5 that these allegations provided relevant "habit evidence." *Id.*  Further, the court
6 reasoned that the stricken allegations were immaterial because they did not provide
7 any background about defendants' alleged infringement of ***plaintiff's*** copyrights and
8 thus were not relevant to the elements of a copyright infringement claim.  *Id*. at *3.
9 Additionally, the citations to the Guardian article and Esty blog post were
10 impertinent, and "len[t] artificial credence to the opinions contained in the articles,
11 and [gave] the appearance that such opinions [were] legally relevant to the dispute."
12 *Id*., quoting *Survivor Productions*, 2001 WL 35829267, at *4.  Finally, even if such
13 allegations were not immaterial, impertinent, or scandalous the court found they
14 "would be unduly prejudicial to the Defendants [and] …. would only confuse and
15 unnecessarily complicate the issues between these particular parties." *Id*. at *3.

16     Courts also have granted Rule 12(f) motions in cases involving claims similar
17 to those in the instant lawsuit.  In *Doe 1 v. Red Roof Inns, Inc.*, where plaintiff
18 alleged violations of Section 1595 arising from her alleged sex trafficking at hotels,
19 the court granted defendant's motion to strike, holding that plaintiffs' complaint
20 "contain[ed] redundant, immaterial, impertinent or scandalous matter including
21 'puffing' about sex trafficking and what it is and why it's bad." 2020 WL 1872335
22 at *5 (N.D. Ga. Apr. 13, 2020).  The court reasoned that "[s]uch matters have no
23 bearing on issues in this case and could serve to prejudice Defendants and confuse
24 the facts at issue." *See also Doe 2 v. Red Roof Inns, Inc.*, 2020 WL 1872337 at *5
25 (N.D. Ga. Apr. 13, 2020); *Doe 3 v. Red Roof Inns, Inc.*, 2020 WL 1872333 at *5
26 (N.D. Ga. Apr. 13, 2020); *Doe 4 v. Red Roof Inns, Inc.*, 2020 WL 1872336 at *5
27 (N.D. Ga. Apr. 13, 2020) (same).
28

Mitchell
Silberberg &
Knupp LLP

11     CASE NO. 3:20-CV-02440
**MEMORANDUM IN SUPPORT OF MOTION TO STRIKE**

As in the aforementioned cases, the allegations of Section J are immaterial, impertinent, and scandalous:

**Immaterial.**  Plaintiffs' allegations about the purported presence of underage and non-consensual videos on MindGeek's Websites have no bearing on the elements of Plaintiffs' claim for sex trafficking under Section 1595.  To hold MindGeek liable for participating in *GDP's sex trafficking venture*, Plaintiffs must establish that MindGeek (1) knowingly participated in GDP's sex-trafficking venture; and (2) knowingly financially benefitted from GDP's sex-trafficking venture.  18 U.S.C. §§ 1591, 1595.

Since the GDP Videos purported to have been created *with* Plaintiffs' consent, the relevant issue (as Plaintiffs concede) is whether MindGeek knew that GDP had only procured Plaintiffs' consent through fraud or coercion or, instead, whether MindGeek reasonably relied on GDP's documentation and representations concerning Plaintiffs' consent.  Whether MindGeek also allegedly failed to remove or screen illegal amateur videos – which are allegations that also have been levied against Twitter, Reddit and others – is an entirely different (and legally complex) issue that need not, and should not, be litigated in this action.  In fact, it is well established that pursuant to Section 230 of the Communications Decency Act, 47 U.S.C. § 230, online platforms such as MindGeek *cannot be liable* for publishing third-party content on their websites, even illegal or offensive content such as "hidden camera videos," nonconsensual or "revenge" videos, child sexual abuse materials, or even terrorist recruitment materials.  *See Doe v. Franco Prods.,* 2000 WL 816779, at *4 (N.D. Ill. June 22, 2000), *aff'd sub nom. Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir. 2003) (website not liable for publishing "hidden camera" videos); *Doe v. Bates,* 2006 WL 3813758, at *5 (E.D. Tex. Dec. 27, 2006) (child pornography); *Gonzalez v. Google, Inc.*, 282 F. Supp. 3d 1150, 1154 (N.D. Cal. 2017) (ISIS terror videos) *appeal filed*, No. 18-16700 (9th Cir., filed Sept. 10, 2018).  As one court explained, "[w]hile the facts of [the illegal content at issue,

1 there child pornography] may be highly offensive, Congress has decided that the
2 parties to be punished and deterred are not the internet service providers but rather
3 are those who created and posted the illegal material….." *Bates*, 2006 WL 3813758
4 at *4. There is no reason for the Court to wade into these issues in this case.

5       Consequently, the allegations of Section J – which have nothing to do with
6 GDP's wrongdoing – are immaterial to the FAC. *See Doe 1*, 2020 WL 1872335 at
7 *5 ("'puffing' about sex trafficking and what it is and why it's bad … have no
8 bearing on issues in this case"); *see also Ghahremani*, 2010 WL 4008506, at *2-3
9 (allegation that defendants infringed the work of two other artists in the same way
10 had no relation to the elements of a copyright infringement claim).

11       **<u>Impertinent.</u>** Likewise, the allegations of Section J are impertinent because
12 they have nothing to do with GDP's wrongdoing, nor with MindGeek's Content
13 Partner and Viewshare Programs. Instead, Section J prominently features claims
14 about the alleged presence on MindGeek's Websites of videos involving underage
15 women, surreptitious filming, and forcible rape – ***none of which is at issue in the***
16 ***GDP Videos***. As in *Beasley* – where the plaintiff in a case involving Coffee-mate
17 attempted to show a pattern of wrongdoing by pointing to unrelated allegations of
18 chocolate price-fixing and lies about baby formula – the allegations of Section J are
19 impertinent because they are "far afield" from the claim at issue and "serve[] solely
20 to prejudice [MindGeek] by painting it as a bad actor[.]" 400 F. Supp. 3d at 963
21 (internal quotations omitted).

22       The impertinence of the allegations in Section J is compounded by Plaintiffs'
23 heavy citation of news articles and self-serving statements made by anti-
24 pornography crusaders. As in *Ghahremani*, reference to these sources "lends
25 artificial credence to the opinions contained in the articles, and gives the appearance
26 that such opinions are legally relevant to the dispute." 2010 WL 4008506, at *3,
27 quoting *Survivor Productions*, 2001 WL 35829267 (striking from the complaint
28 quotations from industry publications and newspapers that described the defendant's

1  television show as a "rip off" of *Survivor*); *Lyons v. Bank of America, NA*, 2011 WL
2  6303390 at *7 (N.D. Cal. Dec. 16, 2011) (striking 90 paragraphs of allegations
3  regarding Congressional hearings and reports because they were "not relevant to any
4  of Plaintiffs' original or amended claims").

5      **<u>Scandalous.</u>**  Perhaps most obviously, the allegations of Section J are
6  scandalous on their face.  They appear to be deliberately aimed at "cast[ing] a
7  cruelly derogatory light" on MindGeek, shocking readers, and engendering hatred
8  for the company.  Plaintiffs' broad accusations about MindGeek's alleged policies
9  regarding non-consensual content; recitation of the stories of unrelated victims of
10 third parties – some of whom were allegedly underage, and ***none of whom was a***
11 ***victim of GDP*** (FAC ¶ 239); and heavy quotation of alleged titles (*id.* ¶ 230), which
12 are ***not titles of GDP Videos***, serve no purpose other than to provoke.  *See*
13 *O'Connor v. Roman Catholic Church of Diocese of Phoenix*, 2005 WL 8160695 at
14 *2-3 (D. Ariz. July 8, 2005) (striking allegations that a defendant was a member of
15 "'The Acapulco Three' – three priests who had been known to travel to Acapulco,
16 Mexico to purchase the sexual favors of young boys" as immaterial, impertinent,
17 and scandalous; reasoning that, while pedophilia alone would not make such
18 allegation scandalous, because the allegation was not critical to plaintiff's claims it
19 "seems to be an attempt to remind the reader of the latest scandals … in order to
20 liken these disgraceful stories to the events set forth in Plaintiff's Complaint").

21     Courts have stricken markedly less offensive allegations and language.  *See*
22 *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1479 (C.D. Cal. 1996) (striking term
23 "Slave Sweatshop" from complaint, even though some of the operators of the
24 facilities at issue had pled guilty to slavery charges, "[b]ecause the term 'Slave
25 Sweatshop' appears only for inflammatory effect, and because it is immaterial,
26 scandalous, and highly prejudicial"); *c.f. Cairns v. Franklin Mint Co.*, 24 F. Supp.
27 2d 1013, 1037 (C.D. Cal. 1998) (striking the phrase "like vultures feeding on the
28 dead" as immaterial and impertinent because there was "no need to couch the

Mitchell Silberberg & Knupp LLP

14  CASE NO. 3:20-CV-02440
**MEMORANDUM IN SUPPORT OF MOTION TO STRIKE**

material allegations of the [FAC] in language that serves only to fan the flames in this already heated dispute").

For all of the foregoing reasons, the allegations of Section J have no place in the FAC. Moreover, the Court should strike Section J because its allegations "create[] serious risks of prejudice … delay, and confusion of the issues." *Fantasy, Inc.*, 984 F.2d at 1528. If the Court allows the claims in Section J to proceed, MindGeek will be forced to answer these allegations; respond to far-reaching, burdensome, and irrelevant discovery about general policies for non-consensual content and videos and victims that ***do not involve GDP***; and potentially litigate these issues at trial.

Not only will the inclusion of these allegations confuse the issues, but it also will create a sideshow by putting MindGeek's general business practices – and those of all Internet websites or social media platforms that allow members of the public to upload and share content – on trial. In fact, the allegations of Section J would require an entire "sub-trial" concerning the scope of Section 230 and the law of content moderation. Entire treatises have been written just about this issue.[8] This is precisely what a motion to strike is designed to prevent. *See Fantasy, Inc.*, 984 F.2d 1528 (striking allegations that "did not involve the parties … would have been burdensome for Fantasy to answer …. would lead to unwarranted and prejudicial inferences against Fantasy …. [and] would have unnecessarily complicated the trial"); *Beasley*, 400 F. Supp. 3d at 963 ("given how far afield the challenged allegations range from the conduct and claims at issue in the instant case … their inclusion in the FAC serves solely to prejudice [defendant] by painting it as a bad actor"). Indeed, even if the allegations in Section J were not immaterial, impertinent or scandalous – which they most certainly are – their prejudice to MindGeek would

---

[8] *See, e.g.* G. Frosio (editor), *The Oxford Handbook of Online Intermediary Liability* (1st ed. 2020).

be grounds alone to strike them.  *Ghahremani*, 2010 WL 4008506 at *3, citing *Fantasy, Inc.*, 984 F.2d 1528).

## IV. CONCLUSION

Because Section J of the FAC is immaterial, impertinent, scandalous, and prejudicial, MindGeek respectfully requests that this Court grant its motion to strike.

DATED: MAY 3, 2021            RESPECTFULLY SUBMITTED,

DAVID A. STEINBERG
MARC E. MAYER
EMILY F. EVITT
MITCHELL SILBERBERG & KNUPP LLP


By: /s/ Marc E. Mayer
    Marc E. Mayer
    Attorneys for Defendants